20-1632

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

## Merry Reed and the Philadelphia Bail Fund

*Appellees*

v.

**Francis Bernard, Arraignment Court Magistrate Judges, Sheila Bedford, Kevin Devlin, James O'Brien, Cateria McCabe, Robert Stack, in their Official Capacities, and President Judge Patrick Dugan, in his Official Capacity, and the Sheriff of Philadelphia**

**Francis Bernard, Sheila Bedford, Kevin Devlin, James O'Brien, Cateria McCabe, Robert Stack, and President Judge Patrick Dugan**

*Appellants*

---

**Appeal from the February 25, 2020, Order
of the United States District Court for the Eastern
District of Pennsylvania, in Civil Action No. 19-3110**

---

**Brief of Appellants Arraignment Court Magistrate Judges Francis Bernard, Sheila Bedford, Kevin Devlin, James O'Brien, Cateria McCabe, and Robert Stack, and Philadelphia Municipal Court President Judge Patrick Dugan**

**MICHAEL DALEY, ESQUIRE**
Attorney I.D. PA 77212
**MEGAN L. DAVIS, ESQUIRE**
Attorney I.D. PA 321341
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
(215) 560-6326

# **Table of Contents**

Table of Contents .......................................................................... i

Table of Authorities..................................................................... iii

Subject Matter and Appellate Jurisdiction ............................................. 1

Statement of the Issue for Review ......................................................... 2

Related Cases and Proceedings .............................................................. 3

Concise Statement of the Case................................................................ 4

Standard of Review ............................................................................. 16

Summary of Argument........................................................................ 17

Argument............................................................................................ 19

    A.    Settled, longstanding law holds that there is no First
          Amendment right to make audio recordings of court
          proceedings: only the right to attend, observe, and
          report, which the Bail Fund has done and may continue
          doing ................................................................................ 19

    B.    The Rules do not meaningfully interfere with the
          Bail Fund's ability to inform itself about preliminary
          arraignments – it may attend, report, and obtain a
          wealth of data about every arraignment .............................. 30

    C.    The lack of official transcripts do not create a new
          constitutional right: the Bail Fund is still able to exercise
          its right of access and meaningfully inform itself about
          arraignments ...................................................................... 37

D.    The Rules reasonably protect a criminal defendant's right to a fair trial, which is the paramount interest in criminal cases, as well as courtroom decorum, while allowing the public full right of access to court proceedings .............................................................. 40

E.    The District Court's decision has far-reaching statewide impact on over 500 magisterial district courts in Pennsylvania.......................................................... 52

Conclusion ............................................................................................. 55

Certifications

# Table of Authorities

## Federal Cases

*Berner v. Delahanty,*
129 F.3d 20 (1st Cir. 1997)..................................................... 44

*Branzburg v. Hayes,*
408 U.S. 665 (1972) ............................................................ 22

*Chandler v. Florida,*
449 U.S. 560 (1981) ....................................................... 23, 46

*Cincinnati Enquirer v. Cincinnati Bd. of Educ.,*
249 F.Supp.2d 911 (S.D. Ohio 2003)..................................... 38

*Combined Communications Corp. v. Finesilver,*
672 F.2d 818 (10th Cir. 1982) ........................................ 25, 41

*Conway v. United States,*
852 F.2d 187 (6th Cir. 1988) ............................................... 24

*Estes v. Texas,*
381 U.S. 532 (1965) ............................................................ 35

*Fields v. City of Philadelphia,*
862 F.3d 353 (3d Cir. 2017)................................................. 29

*Gannett Co., Inc. v. DePasquale,*
443 U.S. 368 (1979) .................................................. 41-43, 49

*Gentile v. State Bar of Nev.,*
501 U.S. 1030 (1991) .......................................................... 44

*Gorum v. Sessoms,*
561 F.3d 179 (3d Cir. 2009)................................................. 16

*Hafer v. Melo,*
502 U.S. 21 (1991) ............................................................. 13

*Huminski v. Corsones,*
  396 F.3d 53 (2d Cir. 2005) .................................................................. 44

*In re Avandia Mktg.,*
  924 F.3d 662 (3d Cir. 2019) .......................................................... 29, 40

*In re Globe Newspaper Co.,*
  729 F.2d 47 (1st Cir. 1984) ................................................................ 42

*Kraska v. Clark,*
  2015 U.S. Dist. LEXIS 109843 (M.D. Pa. 2015) ................................. 44

*McKay v. Federspiel,*
  22 F.Supp.3d 731 (E.D. Mich. 2014) ................................................... 26

*McKay v. Federspiel,*
  2014 WL 7013574 (E.D. Mich. 2014) .................................................. 50

*Melrose, Inc. v. City of Pittsburgh,*
  613 F.3d 380 (3d Cir. 2010) ................................................................ 16

*Mezibov v. Allen,*
  411 F.3d 712 (6th Cir. 2005) .............................................................. 44

*Nazay v. Miller,*
  949 F.2d 1323 (3d Cir. 1991) .............................................................. 55

*Nixon v. Warner Communications, Inc.,*
  435 U.S. 589 (1978) ............................................................................ 22

*PG Pub. Co. v. Aichele,*
  705 F.3d 91 (3d Cir. 2013) .................................................................. 22

*Pomicter v. Luzerne Co. Convention Ctr. Auth.,*
  939 F.3d 534 (3d Cir. 2019) ........................................................... 44-46

*Radio & Television News Ass'n of Southern California v.*
*U.S. Dist. Ct. for Cent. Dist. of California,*
  781 F.2d 1443 (9th Cir. 1986) ............................................................ 25

*Rice v. Kempker*,
    374 F.3d 675 (8th Cir. 2004) .............................................................. 25

*Richmond Newspapers, Inc. v. Virginia*,
    448 U.S. 555 (1980) .......................................................... 21, 44

*Shavlik v. Snohomish Co. Superior Court*,
    2019 WL 2616631 (W.D. Wash. 2019) .............................................. 26

*Soderberg v. Pierson*,
    2020 WL 206619 (D. Md. 2020)...................................................... 26, 36

*Tribune Review Pub. Co. v. Thomas*,
    254 F.2d 883 (3d Cir. 1958)........................................................... 23, 36

*United States v. Antar*,
    38 F.3d 1348 (3d Cir. 1994)........................................................... 38

*United States v. Beckham*,
    789 F.2d 401 (6th Cir. 1986) .......................................................... 24

*United States v. Edwards*,
    785 F.2d 1293 (5th Cir. 1986) ........................................................ 25

*United States v. Grace*,
    461 U.S. 171 (1983) .................................................................... 44

*United States v. Hastings*,
    695 F.2d 1278 (11th Cir. 1983) ...................................................... 24

*United States v. Hernandez*,
    2000 WL 36741162 (S.D. Fla. 2000) ................................................ 27

*United States v. Kerley*,
    753 F.2d 617 (7th Cir. 1985) ......................................................... 25

*United States v. Marcavage*,
    609 F.3d 264 (3d Cir. 2010)........................................................... 20

*United States v. Moussaoui,*
   205 F.R.D. 183 (E.D. Va. 2002) ............................................ 21, 26, 35-36

*United States v. Nabaya,*
   2017 WL 1424802 (E.D. Va. 2017) ...................................................... 26

*United States v. Yonkers Bd. of Educ.,*
   747 F.2d 111 (2d Cir. 1984) ................................................ 25, 35-36, 39

*Waller v. Georgia,*
   467 U.S. 39 (1984) ........................................................................ 21, 42

*Whiteland Woods v. Township of West Whiteland,*
   1997 WL 653906 (E.D. Pa.1997) ........................................................ 27

*Whiteland Woods v. Township of West Whiteland*
   193 F.3d 177 (3d Cir. 1999) ................................................ 27, 29-31, 43

## State Cases

*Petition of Post-Newsweek Stations, Florida, Inc.,*
   370 So.2d 764 (Fla. 1979) ................................................................. 23

## Federal Statutes

28 U.S.C. § 1291 ................................................................................... 1

28 U.S.C. § 1331 ................................................................................... 1

## State Statutes

18 Pa.C.S.A. § 5103.1 .......................................................................... 12

42 Pa.C.S.A. § 3722 ............................................................................. 53

Pa. Const. Art. V, § 10(c) ................................................................. 10-11

# Federal Rules

Fed.R.Crim.P. 53 ............................................................... 11, 24-25

E.D. Pa. LCrR. 53.1 ............................................................... 47

M.D. Pa. LR 83.2 ............................................................... 47

W.D. Pa. LCrR. 83.C ............................................................... 47

# State Rules

Pa.R.Crim.P. 57 ............................................................... 5

Pa.R.Crim.P. 112 ............................................................... 11, 13

Pa.R.Crim.P. 115 ............................................................... 8, 52

Pa.R.Crim.P. 523 ............................................................... 5-7

Pa.R.Crim.P. 524 ............................................................... 6

Pa.R.Crim.P. 530 ............................................................... 5-6, 47

Pa.R.Crim.P. 1003 ............................................................... 5

Pa.R.Crim.P. 1004 ............................................................... 5

Pa.R.Crim.P. 1011 ............................................................... 8

Pa.R.Crim.P. 1012 ............................................................... 8

Pa.R.J.A. 103 ............................................................... 11

Pa.R.J.A. 1910 ............................................................... 11, 13

## **Subject Matter and Appellate Jurisdiction**

The District Court had subject matter jurisdiction under 28 U.S.C.

§ 1331. Appellate jurisdiction is based on 28 U.S.C. § 1291.

## Statement of the Issue for Review

Did the District Court err in concluding that Appellee the Philadelphia Bail Fund has a First Amendment right to make its own audio recordings of preliminary arraignments, when courts have uniformly held that there is no such right, and Pennsylvania's state court rules preventing recordings do not meaningfully interfere with the Bail Fund's ability to inform itself about the arraignments?

Answer: Yes.

## **Related Cases and Proceedings**

In October 2019, a companion case raising the identical legal issues was filed in the United States District Court for the Western District of Pennsylvania against certain Magisterial District Court judges who hear preliminary arraignments in Pittsburgh. *See Stroud v. Butler, et al.*, No. 19-cv-01289 (W.D Pa.). Upon the parties' joint motion, the District Court stayed the case until this appeal is resolved. Lead counsel for the parties in *Stroud* is the same as in this case.

## Concise Statement of the Case

### Relevant Facts

This First Amendment case concerns the Supreme Court of
Pennsylvania's statewide rules and the Philadelphia Municipal Court's
local rules that prohibit attendees of criminal court proceedings from
electronically recording them. Appellee the Philadelphia Bail Fund
challenges those rules as violating the First Amendment.

Specifically, the Bail Fund brings an as-applied challenge,
claiming that the Rules prevent it from making audio recordings of
preliminary arraignments in Municipal Court.

### Preliminary arraignments and bail in Philadelphia Municipal Court.

In Philadelphia, there are six Arraignment Court Magistrates
("magistrates") who preside over preliminary arraignments for
individuals arrested in the city for state crimes. (Joint Appendix 58,
Stipulation ¶ 6.) A magistrate is available twenty-four hours a day,
seven days a week to conduct arraignments, which are held in
Philadelphia's Stout Criminal Justice Center ("CJC"). (Joint Appendix
57-58, Stipulation ¶¶ 3, 7.) Preliminary arraignments are open to the

4

public to attend, observe, and take notes. (Joint Appendix 61, Stipulation ¶ 27.)

One function of a preliminary arraignment is to determine if an arrestee is bailable and, if so, what bail to set. Pa.R.Crim.P. 1003(D)(3)(d)(v).[1] Prior to the arraignment, Pretrial Services (a unit of the First Judicial District of Pennsylvania) interviews the arrestee at one of seven police Divisional Booking Centers where the arrestee is located to gather information relevant to the bail decision. (Joint Appendix 59, Stipulation ¶ 10); Pa.R.Crim.P. 530(A).

That information includes the factors that the magistrate uses in making a bail decision, including the defendant's criminal history, the charges, ties to the community, mental condition, drug issues, a history of flight or escape, use of false identification, and related matters that bear on whether a defendant will appear for court. *See* Pa.R.Crim.P. 523(A).

---

[1] This Brief will use "arraignment" and "bail hearing" interchangeably. A preliminary arraignment is distinguishable from a formal arraignment; the latter occurs after a preliminary hearing and prior to trial. *See* Pa.R.Crim.P. 57, 1004. Formal arraignments are not at issue here.

Pretrial Services provides a report to the magistrate, the arrestee and their counsel, and the prosecution prior to arraignment. (Joint Appendix 59, Stipulation ¶ 12.) The report, which contains sensitive information about the arrestee, is not publically available. Pa.R.Crim.P. 530(C). In setting bail, the magistrate considers the release criteria in Rule 523 and determines the type or combination of types of release on bail that is reasonably necessary, to ensure that the defendant will appear and comply with bail conditions. Pa.R.Crim.P. 524.

Once the arrestee is ready for arraignment, they appear via audio-visual link on a monitor in the CJC arraignment court. (Joint Appendix 59, 61, Stipulation ¶¶ 14-15, 29.) The presiding magistrate is located in the preliminary-arraignment courtroom at the CJC, along with the Commonwealth's attorney and a representative from the Defenders' Association, which represents arrestees who do not have private counsel. (Joint Appendix 59, Stipulation ¶ 14.) All participants, along with court attendees, are able to see and hear the arrestee and each other. (Joint Appendix 59, 61, Stipulation ¶¶ 14-15, 29.)

During the arraignment, the Commonwealth, the arrestee's representative, and the arrestee have an opportunity to address the

6

court on what bail conditions they believe are appropriate, as well as respond to any questions the bail magistrate may have. (Joint Appendix 59, Stipulation ¶ 16.) As noted above, issues that may be discussed during the arraignment include the arrestee's criminal history, the charges, ties to the community, employment status, mental condition, drug issues, a history of flight or escape, and related matters. (Joint Appendix 60, Stipulation ¶ 17); Pa.R.Crim.P. 523.

When the arraignment is over, the magistrate decides whether the arrestee is bailable and, if so, sets bail. (Joint Appendix 60, Stipulation ¶ 19.) The magistrate enters their bail decision, including the monetary amount and any conditions (if either are applicable), into the Preliminary Arraignment Reporting System ("PARS") electronic database. (Joint Appendix 60, 68, Stipulation ¶ 20, Exhibit A.) That information is then transferred into the Common Pleas Criminal Court Case Management System ("CPCMS"). (Joint Appendix 60, Stipulation ¶ 20.)

An arrestee has a right to a bail appeal, which are de novo. (Joint Appendix 61, Stipulation ¶¶ 22-24.) See Pa.R.Crim.P. 1011(A)(providing that a Municipal Court judge may modify bail at any time).

7

Consistent with Pennsylvania rules, there are no publically available transcripts of the arraignments. (Joint Appendix 61, Stipulation ¶ 26.) The state Rules of Criminal Procedure do not require a court to record open court proceedings until after a defendant has been held for court (or after the preliminary arraignment in Municipal Court). Pa.R.Crim.P. 115(a); Pa.R.Crim.P. 1012.

Municipal Court makes audio recordings of preliminary arraignments solely for internal, quality control review purposes. (Joint Appendix 61, Stipulation ¶ 26.) The court uses these recordings to address technical issues, such as the quality of the microphones. They also allow general performance monitoring of the magistrates. (Joint Appendix 116-17, Supp. Stipulation ¶¶ 2-3.)

The recordings are not used for any judicial purpose related to a particular arraignment: they are neither filed of record nor used in making a judicial determination or decision related to a particular case. (Joint Appendix 117, Supp. Stipulation ¶ 5.) Further, they are not processed through the Court's Digital Recording Program, which is used to create official transcripts of other proceedings in Municipal Court. (Joint Appendix 117, Supp. Stipulation ¶ 6.)

**Arraignment and bail information available to the public after the arraignment.**

Following the preliminary arraignment, court documents related to the preliminary arraignment are filed in the public court record for that case, including the bail bond, bail appeal report (if applicable), the criminal complaint, and the preliminary hearing subpoena for the arrestee. (Joint Appendix 62, 72-88, Stipulation ¶ 33, Exhibits B-E.) The bail bond, bail appeal report, and hearing subpoena all contain the bail set in the case and any other bail conditions. (Joint Appendix 72-83, Stipulation, Exhibits B-D.) These documents are available to the public to review at the CJC for free and to obtain copies for a fee (copies are also available by mail upon request). (Joint Appendix 62, Stipulation ¶ 34.)

In addition, docket sheets for every case, which includes arraignment information, are available free on the internet. (Joint Appendix 63, 85, Stipulation ¶¶ 35-37, Exhibit F.) The docket sheet also contains bail information, including when it was set, by what magistrate, the type (cash, unsecured, etc.), the amount, and bail posting status and date, along with upcoming court dates. (Joint Appendix 85, Stipulation, Exhibit F.)

Both the Administrative Office of Pennsylvania Courts and the First Judicial District are able to produce bulk data requests for every single arraignment in Municipal Court for a selected period for a fee. (Joint Appendix 63-64, Stipulation ¶¶ 39-44.) A requestor does not need to know anything about a particular case to obtain information about it: they may simply ask for every arraignment for a particular date or period. (Joint Appendix 63, Stipulation ¶ 41.) The bulk data provided for each case includes roughly four dozen fields for each case, including information related to bail (including type, amount, whether it was posted, the security type, and so on); the defendant (including race, gender, age, residence zip code); the criminal charges; the judge or magistrate; and more. (Joint Appendix 100, Stipulation, Exhibit J.)

The Philadelphia District Attorney's Office compiles statistical information on bail amount by offense category since 2014, in both raw and proportional values, that is available on its website and updated every day. (Joint Appendix 64, Stipulation ¶ 45.)

**Pennsylvania's rules on recording court proceedings.**

The Supreme Court of Pennsylvania has the authority to promulgate rules of procedure and judicial administration. Pa. Const.

Art. V, § 10(c). Municipal Court has the power to adopt local rules affecting the court's administration. Pa.R.J.A. 103.

Pennsylvania's Rules of Criminal Procedure prohibit audio or video recordings of any judicial proceeding by anyone other than an official court stenographer. Pa.R.Crim.P. 112(C). Pennsylvania's Rules of Judicial Administration provide that judges shall prohibit recording and photography (among other things) in a courtroom and areas immediately surrounding a courtroom. Pa.R.J.A. 1910. Consistent with these rules, Municipal Court has promulgated a local rule stating that arraignment court magistrates shall prohibit recordings. *See* Phila.M.C.R.Crim.P.A.C.M. 7.09.[2]

In addition, it is a criminal offense for anyone to record a proceeding within a judicial facility or areas surrounding a judicial

---

[2] The Rules are akin to Federal rules that prohibit recordings. *See* Fed.R.Crim.P. 53 ("Except as otherwise provided by a statute or these rules, the court must not permit the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the courtroom.") The Eastern District has a standing order addressing the same, which covers this Court. *See* June 3, 2019, Standing Order, available at https://www.ca3.uscourts.gov/sites/ca3/files/EDPA_StandingOrder_Pers onalElectronicDevices.pdf (retrieved on April 27, 2020).

facility without court approval, the presiding judicial officer's approval, or as provided by court rule. 18 Pa.C.S.A. § 5103.1.

### Appellee the Philadelphia Bail Fund's ability to report on arraignments and bail.

The Bail Fund is able to attend and report on bail hearings: it sends volunteers into bail hearings to observe and gather information, which it uses to produce public reports and advocate for its positions. (Joint Appendix 66-67, Stipulation ¶¶ 58-61.)[3] It uses social media posts and meets with officials, using the information it collects through its access to arraignment court. (Joint Appendix 56, 67, Stipulation ¶¶ 2, 61.) Further, former Plaintiff Merry Reed has attended various bail hearings at the Criminal Justice Center to compile information for the publication, *The Declaration.* (Joint Appendix 48, Complaint ¶¶ 42-43.)[4]

---

[3] For example, the Bail Fund participated in producing a 41-page report on arraignments in October 2018 and issued a press release on arraignments, among other reports. (Joint Appendix 67, Stipulation ¶¶ 59-60.)

[4] Plaintiff Reed withdrew from this case by a Stipulation of Dismissal filed on December 19, 2019. (Dist. Ct. Doc. 37.)

**Claims and requested relief.**

The Bail Fund claims that Pa.R.Crim.P. 112(C), Pa.R.J.A. 1910,

and Municipal Court Arraignment Court Magistrate Local Rule 7.09

are unconstitutional as applied to it because they prohibit it from audio

recording preliminary arraignments in the Municipal Court, in violation

of the First Amendment. (Joint Appendix 52, Complaint, Prayer for

Relief.) Thus, the Bail Fund sought a declaration that the cited rules

are unconstitutional as applied to it. (Joint Appendix 52, Complaint,

Prayer for Relief.) Judicial Appellants are sued in their respective

official capacities only.[5]

**Procedural history.**

The Bail Fund started this case by filing a Complaint on July 17,

2019. Co-defendant the Sheriff of Philadelphia was also sued. Following

oral argument on the Judicial Appellant and the Sheriff's respective

Motions to Dismiss, the parties agreed to have the Court dismiss the

Motions without prejudice, and the parties would file cross-motions for

---

[5] An official capacity suit against a public official is really against the
government entity the person is a part of. *Hafer v. Melo*, 502 U.S. 21, 26
(1991). In this case, the claims against the Judicial Appellants are
really against Municipal Court.

summary judgment. (Dist. Ct. Docs. 24-25, 30.) A Stipulation of undisputed facts was filed on December 11, 2019, and a Supplemental Stipulation was filed on January 6, 2020. (Joint Appendix 54, 116, Dist. Ct. Docs. 31, 42.) The Bail Fund also filed a Declaration with its summary judgment motion. (Joint Appendix 121.) The parties filed respective Motions for Summary Judgment on December 20th. (Dist. Ct. Docs. 38-40.)

## Ruling Presented for Review

The District Court granted the Bail Fund's Motion for Summary Judgment and denied Judicial Appellants' Motion for Summary Judgment by Order of February 25, 2020. The court held that Rules 112(C), 1910, and 7.09 were unconstitutional under the First Amendment as applied to bail hearings in Municipal Court as long as Municipal Court does not make available to the Bail Fund "official audio recordings or transcripts[.]"

The court authorized the Bail Fund to make its own audio recordings within 45 days if Municipal Court does not make available to the Bail Fund "official audio recordings or transcripts[.]" The February 25th Order also granted Sheriff of Philadelphia's summary judgment on

the Bail Fund's claim for attorney's fees and costs, denied its summary judgment motion against the Bail Fund otherwise, and dismissed as moot the Sheriff's indemnity crossclaim against Judicial Appellants.

By Order of April 7, 2020, upon the parties' joint motion, the District Court vacated a portion of its February 25th Order and extended the original 45 day period until June 9, 2020. (Joint Appendix 125, Dist. Ct. Doc. 58.)

## Standard of Review

This Court exercises plenary review from a grant of summary judgment. *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009). "Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). In cases involving First Amendment issues, this Court must independently examine the entire record. *Id.*

## Summary of the Argument

Settled law has held for decades that there is no First Amendment right to make audio recordings of court proceedings. Instead, the right is a right of access to attend and report. The courts have left the issue of audio recordings to states to decide as a policy issue – not a constitutional issue.

The question under this Court's precedent is whether the Rules meaningfully interfere with the Bail Fund's ability to inform itself about the arraignments. They do not. The Bail Fund is able to attend and report on arraignments, obtain court filings, access dockets, and obtain data compilations for every arraignment. Its inability to make audio recordings and post audio clips online does not meaningfully interfere with its ability to inform itself about arraignments.

Next, that official transcripts of arraignments do not exist does not abrogate the bedrock case law that there is no right to make recordings. The cases holding that no First Amendment right exists to make audio recordings did not base their holdings on whether a transcript existed. Indeed, almost none mention a transcript.

Finally, Pennsylvania has made a reasonable policy decision consistent with that established law to mitigate the potential prejudice to criminal defendants and to ensure the decorum of court proceedings. Alleviating prejudice to a defendant is – as the United States Supreme Court holds – the "central aim" of criminal proceedings. Arraignments are ripe with prejudicial information, including a defendant's criminal history, the nature of the current charge, a history of flight or escape, use of false identification, and related factors. Broadcasting a defendant's own words discussing such prejudicial, inadmissible evidence risks the central aim of criminal proceedings. The Rules both address this prejudice (along with maintaining decorum and proper court administration) and allow the public access to court, the ability to report on arraignments, and access to court filings and information.

## Argument

**A.    Settled, longstanding law holds that there is no First Amendment right to make audio recordings of court proceedings: only the right to attend, observe, and report, which the Bail Fund has done and may continue doing.**

The unwavering law for decades is that the First Amendment protects a right of access to attend, observe, and report on judicial proceedings. When it comes to allowing attendees to make their own recordings or broadcast proceedings, however, courts have refused to extend the First Amendment that far. They instead hold that the issue is not a constitutional question, but a policy decision for each judicial system.

The Pennsylvania Supreme Court and Municipal Court have made a policy decision, pursuant to their affirmative constitutional duty to ensure that defendants receive a fair trial, to not allow court attendees to make audio recordings of court proceedings. This decision mitigates prejudice to defendants and preserves courtroom decorum, as well as allowing judicial officers to focus on carrying out their judicial duties.

Nonetheless, the Bail Fund seeks to extend the First Amendment right of access into a right to make its own electronic audio recordings

of court proceedings regardless of these policy decisions.[6] Yet, aside from the District Court in this case, no court holds that such a right exists. Instead, courts uniformly hold the opposite, as set forth below.

The Bail Fund attempts to avoid the settled law and long-standing principles by instead trying to paint a picture that preliminary arraignments in Philadelphia are "largely hidden from public view" with an "absence of any public record," and, therefore, they should be able to make audio recordings to put on the internet. (Joint Appendix 39, Complaint ¶¶ 3-4.) But the reality is different. Indeed, the Bail Fund and the public can:

- attend and observe every preliminary arraignment in Municipal Court;

- take notes and report on every arraignment;

- obtain bail information from the bail bond and other documents that are filed immediately after the arraignment;

---

[6] Because this is an as-applied challenge, the Bail Fund must show that the Rules as applied to it in a particular circumstance violated its constitutional rights. *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

- obtain the criminal complaint immediately after the
  arraignment;

- access the online dockets, which include bail
  information, for every case after the arraignment; and

- obtain bulk data from the case management system on
  roughly four dozen fields pertinent to bail for every
  arraignment for any period.

The Bail Fund's First Amendment right of access to attend
arraignments and obtain information has not been violated: the Rules
do not meaningfully interfere with its ability to inform itself of the
proceedings. Thus, it is able to exercise its qualified First Amendment
right to attend criminal trials and related proceedings. *See Waller v.
Georgia*, 467 U.S. 39, 44 (1984); *Richmond Newspapers, Inc. v. Virginia*,
448 U.S. 555, 580 (1980). This right to access is "constitutionally
satisfied when some members of both the public and the media are able
to 'attend the trial and report what they have observed.'" *United States*

*v. Moussaoui*, 205 F.R.D. 183, 185 (E.D. Va. 2002)(quoting *Nixon v.*
*Warner Communications, Inc.*, 435 U.S. 589, 610 (1978)).[7]

Municipal Court allows the public, press, and the Bail Fund's
volunteers to attend arraignments and report on them as they see fit.
Hence, the Bail Fund has its protected right to access.

### 1.    Case law is consistent: the First Amendment protects the right to attend, observe, and report on criminal court proceedings only.

Courts have consistently held that the press and public have no
right to record or broadcast court proceedings. Neither the Supreme
Court nor any circuit court has held that the First Amendment
encompasses a right to electronically record proceedings.

The Supreme Court has addressed the recording of criminal
proceedings, and it has never held that the press or public have a
constitutional right to record them. Indeed, its discussions of the issue
are to the contrary. In *Nixon v. Warner Communications, Inc.*, the court
rejected a claim that releasing audio tapes played at a trial is required,

---

[7] Although the media has a role in disseminating information to the
public, its right to access is no greater than the public's right. *PG Pub.*
*Co. v. Aichele*, 705 F.3d 91, 99 (3d Cir. 2013)(citing *Branzburg v.*
*Hayes*, 408 U.S. 665, 684 (1972)), *cert. denied*, 569 U.S. 1018 (2013).

despite the claim that the releasing them would allow people to form judgments as to their meaning "based on inflection and emphasis." The court stated: "there is no constitutional right to have [live witness] testimony recorded and broadcast." 435 U.S. 589, 610 (1978).

Three years later, the Supreme Court favorably quoted the Florida Supreme Court's holding that while the due process clause "does not prohibit electronic media coverage of judicial proceedings *per se,* by the same token, we reject the argument . . . that the first and sixth amendments to the United States Constitution mandate entry of the electronic media into judicial proceedings." *Chandler v. Florida,* 449 U.S. 560, 569 (1981)(quoting *Petition of Post-Newsweek Stations, Florida, Inc.,* 370 So.2d 764, 774 (Fla. 1979)). The court went on to hold that while there was no inherent due process denial in allowing criminal proceedings to be televised, it was up to the states to decide whether to allow broadcasting. *Id.* at 578-80.

This Court long ago recognized that courts may craft rules that limit the press' access to information without violating the First Amendment. *See Tribune Review Pub. Co. v. Thomas*, 254 F.2d 883, 885 (3d Cir. 1958)(holding that a Pennsylvania court rule prohibiting the

taking of photographs in and about the courthouse to be a valid exercise of judicial authority and did not violate the right to access). Other circuit courts have also held that there is no First Amendment right to record or broadcast a proceeding.

A leading case is the Eleventh Circuit's decision on whether news organizations have a First Amendment right to record and broadcast federal criminal trials. *See United States v. Hastings*, 695 F.2d 1278 (11th Cir. 1983), *cert. denied*, 461 U.S. 931 (1983). The challenge there was to Federal Rule of Criminal Procedure 53, which – like the Rules at issue here – prohibits broadcasting and recording courtroom proceedings. The court relied on Supreme Court case law in holding that the First Amendment does not encompass a right to record court proceedings. *Id.* at 1280-81 (analyzing Supreme Court case law). Instead, it concluded that Rule 53 was a valid "time, place, and manner" restriction. *Id.* at 1283-84.

Other circuits are consistent in holding the same. *See Conway v. United States*, 852 F.2d 187, 188 (6th Cir. 1988)(holding that Rule 53 does not violate the First Amendment), *cert. denied*, 488 U.S. 943 (1988); *United States v. Beckham*, 789 F.2d 401, 414-15 (6th Cir.

1986)(holding that no fundamental right is implicated where the public and press had the opportunity to hear the playing of taped conversations in court, despite the court's refusal to allow both copies and transcripts of the tapes to be released); *Radio & Television News Ass'n of Southern California v. U.S. Dist. Ct. for Cent. Dist. of California*, 781 F.2d 1443, 1447 (9th Cir. 1986)(holding that the media's right to gather information is no more than a right to attend a criminal trial and report on their observations); *United States v. Edwards*, 785 F.2d 1293, 1296 (5th Cir. 1986)(upholding Rule 53 and stating that there is no "abridgement of the freedom of press" as long as the press can send representatives to trials and report on them); *United States v. Kerley*, 753 F.2d 617, 622 (7th Cir. 1985)(upholding Rule 53); *United States v. Yonkers Bd. of Educ.*, 747 F.2d 111, 113 (2d Cir. 1984)(rejecting a reporter's First Amendment argument that since he "relies heavily on his tape recorder, he is effectively excluded" from court if he could not use it; the court held that the Amendment protects only the "physical presence at trials"); *Combined Communications Corp. v. Finesilver*, 672 F.2d 818, 821 (10th Cir. 1982)(upholding local rule banning recording devices); *see also Rice v. Kempker*, 374 F.3d 675, 679 (8th Cir.

25

2004)(stating that "courts have universally found that restrictions on videotaping and cameras do not implicate the First Amendment guarantee of public access.").

District courts have been equally harmonious in holding that there is no First Amendment right to record court proceedings, except for the District Court below. Those cases include *Soderberg v. Pierson,* 2020 WL 206619, at *13 (D. Md. 2020)(holding that Maryland's broadcast ban of criminal proceedings was a valid time, place, and manner restriction and did not violated the First Amendment), *appeal pending,* No. 20-1094 (4th Cir.); *Shavlik v. Snohomish Co. Superior Court,* 2019 WL 2616631, at *7 (W.D. Wash. 2019)(collecting cases and holding that the media's First Amendment right is limited to attending proceedings and reporting their observations); *United States v. Nabaya,* 2017 WL 1424802, at *2 (E.D. Va. 2017)(upholding challenge to a local court rule that prohibited recording devices at arraignment and pretrial hearings); *McKay v. Federspiel,* 22 F.Supp.3d 731, 736 (E.D. Mich. 2014)(upholding a state court electronics ban that the plaintiff claimed violated his constitutional rights to record proceedings and matters of public concern in a government center); *Moussaoui,* 205 F.R.D. at 185

(noting that the Fifth, Sixth, Seventh and Eleventh Circuits have held that the First Amendment "does not include a right to televise, record or otherwise broadcast federal criminal trial proceeding"); and *United States v. Hernandez*, 2000 WL 36741162, at *2 (S.D. Fla. 2000)(holding that the First Amendment right is a "right to attend, rather than a license allowing cameras or tape-recorders into the courthouse[.]"); *see generally Whiteland Woods, L.P. v. Township of West Whiteland*, 1997 WL 653906, at *5 (E.D. Pa.1997)(collecting cases)(stating that the First Amendment "does not guarantee the right to record or broadcast live testimony or other trial proceedings" and is "not violated by absolute bans on video cameras or still-picture cameras in courtrooms"), *aff'd*, 193 F.3d 177 (3d Cir. 1999).

## 2. The District Court's legal reasoning departs from this uniform law.

Instead of utilizing this well-established, unanimous case law, the District Court took an alternative approach to create novel First Amendment law. It cobbled together cases that:

- did not involve the right to make audio recordings of court proceedings;

- involved video recording law enforcement in public areas; and

- dealt with a court's decision in a specific case to preclude the press from an open court proceeding and sealed transcripts of that proceeding.

In doing so, the District Court came to a unique conclusion: that a court has an affirmative duty to *create* judicial records that it would not have otherwise created, and must provide the press and public with these newly created records.[8] If it does not do so, then the press and public may claim an abridgment of First Amendment rights that they otherwise would not have had and can start recording and broadcasting those recordings. The District Court framed the issue too broadly and went far afield of even the Bail Fund's arguments, and, respectfully, led to an erroneous conclusion.

---

[8] To create official transcripts equivalent to those used in other Municipal Court proceedings as the District Court ordered would entail hiring additional technical personnel to ensure the transcripts reliability and accuracy. This would be an additional expense requiring Municipal Court to include in its annual budget request to the City of Philadelphia.

The District Court began its analysis by citing cases involving the closure of courtrooms, which is not applicable here as arraignments are open to the public. (Joint Appendix 15-17, Dist. Ct. Op. at 9-11.) The court then turned to access to "judicial records." (Joint Appendix 19-20, Dist. Ct. Op. at 13-14.) "Judicial records" are those that have been "filed with the court or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *In re Avandia Mktg.,* 924 F.3d 662, 672 (3d Cir. 2019). There is no dispute that the Bail Fund has access to all "judicial records." Moreover, the Bail Fund did not base its First Amendment claim on a lack of access to "judicial records." Rather, the District Court wove this unrelated case law on accessing preexisting judicial records into this case.

Next, the lower court looked at this Court's decision in *Fields v. City of Philadelphia,* 862 F.3d 353 (3d Cir. 2017), which involved video recording police activity in public areas, for guidance. Finally, the District Court analyzed this Court's decision in *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177 (3d Cir. 1999), in which this Court denied a First Amendment claim involving the plaintiff's inability to videotape a township meeting.

Mixing these cases together, the District Court concluded that there is an "essential nexus" between the Bail Fund's right of access and its ability to record judicial proceedings. (Joint Appendix 29, Dist. Ct. Op. at 23.) In doing so, it departed from bedrock law and cast aside the policy decisions that the Supreme Court of Pennsylvania and Municipal Court have made in administering their court systems.

This Court's *Whiteland Woods* decision, however, holds that the issue is properly framed as whether the Rules: 1) restrict access, or 2) merely (and permissibly) restrict the manner in which access occurs. Thus, do they meaningfully interfere with the Bail Fund's ability "to inform itself of the proceeding?" The Rules here do not.

## B.    The Rules do not meaningfully interfere with the Bail Fund's ability to inform itself about preliminary arraignments – it may attend, report, and obtain a wealth of data about every arraignment.

In determining whether limits on electronic devices in the courtroom violate the right to access, the *Whiteland Woods* holding is instructive, but for different reasons than the District Court used it for. There, this Court held that the "critical question regarding a content-neutral restriction on the time, place, or manner of access to a government proceeding is whether the restriction meaningfully

interferes with the public's ability to inform itself of the proceeding: that is, whether it limits the underlying right of access rather than regulating the manner in which that access occurs." *Whiteland Woods, L.P.*, 193 F.3d at 183.[9]

Here, the Bail Fund's right of access has not been meaningfully interfered with. First, it is able to attend proceedings, take notes, and report on them. Indeed, the Bail Fund has volunteers attend arraignments to observe and gather information, which it uses to produce public reports both online and in writing. (Joint Appendix 57, Stipulation ¶ 3.)[10] It uses social media posts and meets with government officials about the bail system, using the information it collects through its access to court. (Joint Appendix 57, Stipulation ¶ 3;

---

[9] The Rules are content-neutral.

[10] Including the Bail Fund's involvement in a 41-page report on arraignments in October 2018, among other reports. (Joint Appendix 67, Stipulation ¶¶ 59-60.) The Bail Fund also currently posts "Daily Bail Reports" that include "the percentage of bail and other release conditions set each day, number of cases where bail was posted, number of cases where public counsel was assigned, highest and lowest bail amount, and average bail amount."
https://www.phillybailfund.org/daily-bail-reports (retrieved on April 27, 2020).

Joint Appendix 40, 49, Complaint ¶¶ 9, 46.) Further, Reed was able to

attended preliminary arraignments to compile information for the

publication, *The Declaration*. (Joint Appendix 11, Complaint ¶¶ 42-43.)

In short, the Bail Fund's ability to report on arraignments, educate the

public, and advocate for its position belies its claim that it cannot

report, comment on, and "spur debate" over bail.

Second, additional means exist to obtain information about bail at

arraignments in addition to attending hearings. One way is to access

the publically available bail documents filed with the court after a

preliminary arraignment, which include the bail bond, bail appeal

report (if applicable), criminal complaint, and preliminary hearing

subpoena. (Joint Appendix 62, 72-88, Stipulation ¶¶ 33-34, Exhibits B-

E.) Bail information is included on the bail bond, the preliminary

hearing subpoena, and the bail appeal.

In addition, dockets, which also include bail information, for every

case are available on-line for free after a preliminary hearing.[11] (Joint

---

[11] Docket sheets for Pennsylvania criminal cases, which include bail
information, are accessible through the Commonwealth's Unified
Judicial System Web Portal through the Common Pleas Case

Appendix 63, Stipulation ¶¶ 35-37.) Thus, in contrast to the Bail Fund's assertion, the public does not have to contemporaneously document a "vast amount of information" about a case in real time during the arraignment. (Joint Appendix 50, Complaint ¶ 51.) Instead, they can take notes on what is said, and then get documents and dockets immediately after the arraignment that have more information about the defendant, the charges, the bail set, and so forth.

Another way the Bail Fund can obtain information is through data compilations of almost 50 fields of information pertinent to bail for every arraignment in Municipal Court for any selected period. (Joint Appendix 63-64, Stipulation ¶¶ 39-44.) These reports contain a wealth of information related to bail, the defendant (including race, gender, age, residence zip code), the charges, the judge, and so on. (Joint Appendix 100, Stipulation, Exhibit J.) Also, the Philadelphia District Attorney's Office compiles statistical information on bail amount by offense category since 2014, in both raw and proportional values. (Joint Appendix 64, Stipulation ¶ 45.)

---

Management System. (Joint Appendix 63, 85, Stipulation ¶¶ 35-37, Exhibit F.)

The bulk data available to the public provides more readily available information about arraignments in Municipal Court (and throughout Pennsylvania) than the public could obtain for federal court arraignments and proceedings.[12] Thus, the public's ability to monitor and obtain objective facts about arraignments is not "hidden from public view," as the Bail Fund claims. Nor is there an "absence of any public record" of the proceedings.

The Bail Fund contends that access to audio records would allow it to insert audio clips into its website and social media platforms, thereby highlighting the "human elements" and the "tone and tenor" of the arraignments. (Joint Appendix 64-65, Complaint ¶¶ 47-49.) Of course, the Bail Fund's assertions could also be made about other media: inserting pictures and videos of the courtroom, the defendant, and the other participants would also highlight the "human aspects."

---

[12] While there is a fee for these bulk reports, there are fees for a multitude of court records, including transcripts, access to PACER in the federal courts, and so on. Indeed, if there were official transcripts of arraignments in Municipal Court, there would be a charge to obtain them, as there is with other Municipal Court transcripts.

Yet the unique features of each do not create a First Amendment right where none exists.[13]

Next, any claim that Judicial Appellants must allow audio recording because not everyone can attend proceedings does not make recording constitutionally mandated. To the contrary, "the inability of every interested person to attend the trial in person or observe it through the surrogate of the media does not raise a question of constitutional proportion," but rather raises a "question of social and political policy best left to the United States Congress and the Judicial Conference of the United States." *Moussaoui*, 205 F.R.D. at 186.

Likewise, audio recordings are not required to provide a further check on the judicial process. Justice Harlan noted that "it is impossible to believe that the reliability of a trial as a method of finding facts and determining guilt or innocence increases in relation to the size of the crowd watching it." *Estes v. Texas*, 381 U.S. 532, 595 (1965)(Harlan, J.,

---

[13] The Second Circuit put it succinctly: "[if] '[o]ne picture is worth more than ten thousand words,' the argument that appellant makes for a right to record could be made with equal force for a right to photograph. Yet, it is well settled that, insofar as courtroom proceedings are concerned, the latter right is not guaranteed by the Constitution." *Yonkers Bd. of Educ.*, 747 F.2d at 113.

concurring). Instead, the "presence of interested spectators, attorneys, jurors and a judge" satisfies the safeguards of a public trial and the integrity of those proceedings. *Moussaoui*, 205 F.R.D. at 186. *See also Yonkers Bd. of Educ.*, 747 F.2d at 113 (dismissing the plaintiff's claim that his asserted right to record was strengthened by the "public's right to know.").

Thus, the Bail Fund's inability to make audio recordings and post them online does not meaningfully interfere with its ability to inform itself about arraignments. The Rules do not limit access – they simply regulate the manner of access, consistent with a court's ability to construct rules related to manner of access, which is what courts may do and have done for decades. *See Tribune Review Pub. Co.*, 254 F.2d at 885.

The Bail Fund's policy arguments are just that: policy arguments. They do not create a First Amendment right to record proceedings. The Bail Fund's arguments are better directed to the state rules committee, which has the authority to make recommended changes to the procedural rules to the Supreme Court of Pennsylvania. *See Soderberg*, 2020 WL 206619, at *13 (stating "the social and political policy of the

Maryland Broadcast Ban is best left to the General Assembly of Maryland.")

### C. The lack of official transcripts do not create a new constitutional right: the Bail Fund is still able to exercise its right of access and meaningfully inform itself about arraignments.

The cases holding that no First Amendment right exists to make audio recordings did not base their holdings on whether a transcript existed. Indeed, almost none mention a transcript. Instead, they focused on whether the right of access encompassed a right to make audio recordings. While a few of those cases referenced the availability of transcripts (including *Yonkers Board of Education* and *Soderberg*) those references were tangential to the holdings. Notably, those cases did not hold that because there is no First Amendment right to record as long as a transcript exists.[14]

---

[14] Besides, just a transcript would not solve the Bail Fund's claimed need for audio to provide the "human elements" and "tone and tenor." Further, the Bail Fund's argument that these factors require a new constitutional right could be made about a hearing even where a transcript exists: having a written transcript does not allow the highlighting of the human elements and a proceeding's tone and tenor that the Bail Fund seeks.

The District Court tied its holding to the lack of transcripts, and did so by relying on this Court's decision in *United States v. Antar*, 38 F.3d 1348 (3d Cir. 1994). But *Antar* involves facts that are not present here. In *Antar*, newspapers challenged a trial court's decision to prevent reporters from attending jury voir dire proceedings and in sealing the transcript of the proceedings. Thus, the trial court meaningfully interfered with the plaintiff's ability to access judicial proceedings. The case at bar is not that case: the Bail Fund and the public are able to attend arraignments. Their right of access is uninhibited.

In addition, in *Antar* the sealed voir dire transcript was a "judicial record" subject to the right of access. *Id.* at 1351. Here, conversely, the issue of "judicial records" is irrelevant: no judicial records exist that are withheld from the Bail Fund. Notably *Antar* does not hold that a court must create a record that does not exist. *See Cincinnati Enquirer v. Cincinnati Bd. of Educ.*, 249 F.Supp.2d 911, 917 (S.D. Ohio 2003)(holding that there is no First Amendment right to force the government to create a record that does not exist). The Bail Fund and the public have access to judicial records that document every arraignment. Thus, this is not a denial of judicial records case – the Bail Fund has never made that claim.

To support its holding that the lack of transcripts mandate a new First Amendment right, the District Court looked to the Second Circuit decision of *Yonkers Board of Education*, stating that it "touched upon the existence of an official reporting system as one of the reasons not to allow the public to make recordings." (Joint Appendix 23, Dist. Ct. Op. at 17.) Respectfully, this overstates the importance the Second Circuit placed on the availability of an official reporting system, though. The reporting system was simply a reason that was "added to" the Second Circuit's analysis. *Yonkers Bd. of Educ.*, 747 F.2d at 114. It was not the foundation for the court's holding. The court's holding was grounded on the First Amendment's guarantee of a right to attend and observe, and the rule preventing a reporter from using a tape recorder was a reasonable time, place, and manner restriction. *Id.*

Finally, the District Court gave undue weight to the fact that the Municipal Court makes internal recordings of arraignments for quality control purposes. These recordings for internal administrative and technical reasons are irrelevant here. They are neither filed in a case nor relied on in making a judicial determination. Thus, they are not judicial

records subject to the right of access (and the Bail Fund has not brought such a claim, anyway). *See In re Avandia Mktg.,* 924 F.3d at 672.

All in all, that the Bail Fund cannot use audio clips to insert into its reports or an online article does not meaningfully restrict its access to court – regardless of whether a transcript exists. The Bail Fund has been able to report on arraignments, may continue to do so, and utilize the wealth of additional resources available to buttress its reporting. The Rules simply regulate the manner of access in a way to protect defendants' rights to a fair trial, preserve decorum, and ensure that the public has a First Amendment right of access to attend, report, and obtain judicial filings.

## D.   The Rules reasonably protect a criminal defendant's right to a fair trial, which is the paramount interest in criminal cases, as well as courtroom decorum, while allowing the public full right of access to court proceedings.

The Supreme Court of Pennsylvania and Municipal Court's policy decisions to restrict audio recordings are reasonable decisions to mitigate potential prejudice to defendants and to the court system, which as the United States Supreme Court holds, is the "central aim" of criminal proceedings.

The state Rules apply to preliminary arraignments not only in Municipal Court, but also in all court proceedings throughout Pennsylvania. These Rules are consistent with both federal rules and other states' rules limiting the ability of court attendees to make their own recordings, which the Pennsylvania courts have promulgated in their authority to administer the judicial system. *See Combined Communications Corp.*, 672 F.2d at 821 (upholding a local rule banning recording devices, and holding that "[t]he courtroom and courthouse premises are subject to the control of the court, and courts may impose restrictions upon media access to courtrooms and courthouse premises when necessary to protect and facilitate the proper administration of the judicial system").

The United States Supreme Court acknowledges that "adverse publicity can endanger" a defendant's ability to receive a fair trial. *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 378 (1979). For that reason, courts have an "affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." *Id.* Indeed, the "central aim of a criminal proceeding must by to try the accused fairly," and the "public-

trial guarantee" is for a defendant's benefit, not the public's. *Waller*, 467

U.S. at 46 (addressing the Sixth Amendment right to a public trial).

The Supreme Court warns of the particular danger that judges

and courts must be aware of with regard to pretrial proceedings:

> Publicity concerning the proceedings at a pretrial hearing,
> however, could influence public opinion against a defendant
> and inform potential jurors of inculpatory information
> wholly inadmissible at the actual trial. The danger of
> publicity concerning pretrial suppression hearings is
> particularly acute, because it may be difficult to measure
> with any degree of certainty the effects of such publicity on
> the fairness of the trial.

*Gannett Co., Inc.*, 443 U.S. at 378.

Bail hearings – like suppression hearings – often contain

prejudicial evidence that would be inadmissible during a trial, including

the defendant's criminal history, the charges, ties to the community,

mental condition, drug issues, history of flight or escape, and related

matters. Courts, therefore, "should show heightened concern about the

threat that the public dissemination of such inadmissible evidence

would have on the accused right to a fair trial." *In re Globe Newspaper

Co.*, 729 F.2d 47, 59 (1st Cir. 1984). Indeed, the First Circuit notes that

a defendant's "privacy and fair trial interests" are at their "zenith

42

during the bail hearings, since they have not yet had an opportunity to test the material admitted at the hearings." *Id.*

Further, as the Supreme Court recognizes, trying to "measure with any degree of certainty the effects of such publicity on the fairness of the trial" is difficult. *Gannett Co., Inc.*, 443 U.S. at 378. Thus, in light of recognized prejudices and the difficulty in trying to measure those effects, the Pennsylvania courts have acted to allay these concerns ahead of time.

Courts generally have used one of two analysis in reviewing limits on electronic devices in the courtroom: 1) time, place, and manner restrictions, or 2) a forum analysis. *Whiteland Woods, L.P.*, 193 F.3d at 182. Although the District Court did not use a forum analysis, principles from both tests have been used by courts examining similar recording rules.[15]

In determining whether the First Amendment protects a right of expression on government property under a forum analysis, the court

_____

[15] In the District Court, the Judicial Appellants argued that the proper analysis is right of access. Judicial Appellants but also explored the issue using a forum analysis given that there was ambiguity on what grounds the Bail Fund anchored its argument on.

must first examine the nature of the forum in which the speech is restricted – whether the forum is public or nonpublic. *Pomicter v. Luzerne Co. Convention Ctr. Auth.*, 939 F.3d 534, 539-40 (3d Cir. 2019).

Courtrooms are nonpublic forums. *See Huminski v. Corsones*, 396 F.3d 53, 91 (2d Cir. 2005)(collecting cases); *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005), *cert. denied*, 547 U.S. 1111 (2006); *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997), *cert. denied*, 523 U.S. 1023 (1998). Thus, "the First Amendment rights of everyone . . . are at their constitutional nadir." *Kraska v. Clark*, 2015 U.S. Dist. LEXIS 109843 (M.D. Pa. 2015)(quoting *Mezibov*, 411 F.3d at 718); *see also Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991)("It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed").[16]

---

[16] In *Richmond Newspapers, Inc. v. Virginia*, the Supreme Court noted that a courtroom is a "public place where the people generally – and representatives of the media – have a right to be present." 448 U.S. 555, 578 (1980). Yet the court did not hold that a courtroom is a public forum – it was not conducting a forum analysis. Moreover, the court simply stated that the public and media have a "right to be present," which is also not an issue here. Three years later, the court held that merely because the public is allowed to "come and go at will" in a place does not make it a public forum. *See United States v. Grace*, 461 U.S. 171, 177 (1983).

Because courtrooms are nonpublic forums, the government has

more "flexibility to craft rules limiting speech." *Pomicter*, 939 F.3d at

540. It may reserve a nonpublic forum for its "intended purposes,

communicative or otherwise," provided that the regulation on speech is

"reasonable and not an effort to suppress expression merely because

public officials oppose the speaker's view." *Id.*

The reasonableness question turns on whether the government's

policy is "reasonable in light of the purpose served by the forum." *Id.* at

541. The government's burden is "light" and a "low bar": it need provide

only a legitimate explanation based on the forum's purposes and

surrounding circumstances. *Id.* at 541, 543. When it comes to

reasonableness, the regulation need not be the "most reasonable or the

only reasonable regulation possible" – it just needs to be reasonable. *Id.*

Accordingly, whether "other strategies" could be used is irrelevant, and

there is no need for restrictions to be narrowly tailored. *Id.* at 545.

Given that many courts prevent attendees from making audio

recordings and have for decades, this Court may make a "commonsense

inference" based upon record evidence of the courtroom's purpose – to

conduct preliminary arraignments – that the limitations on recordings

45

are reasonable. *See Pomicter*, 939 F.3d at 543 ("If the restrictions are reasonably explained, accord with the evidence or commonsense, and are connected to the purpose of the forum, we are constrained to be lenient in our review.")

Importantly, the government does not have to wait until "havoc is wreaked" to restrict access. *Id.* Instead, it may act ahead of time to prevent possible issues, like those set forth below. Thus, Pennsylvania's prophylactic rules to mitigate against prejudice is not only constitutionally permitted – it's good policy.

The Supreme Court of Pennsylvania and Municipal Court have acted ahead of time to mitigate the potential prejudice to defendants, while still allowing the public and media access to court. That is a policy decision within those courts' discretion. *See Chandler*, 449 U.S. at 574.

1. **Preliminary arraignments and bail hearings are ripe with potentially prejudicial information that could affect a defendant's right to a fair trial.**

During bail hearings, many factors are considered that can have prejudicial effects on a defendant's right to obtain a fair trial. These include the defendant's criminal history, the nature of the current charge, drug abuse issues, mental condition, a history of flight or

escape, use of false identification, and related factors.[17] Having a
defendant's own words discussing such prejudicial, inadmissible
evidence broadcast online risks the right to a fair trial.

The detrimental nature of such information is why the American
Bar Association and other federal courts have recognized that
information such as a "prior criminal record," a defendant's
"confessions, admissions, or statements," and a defendant's refusal to
submit to a test or examination (and the outcome of such tests) are
"substantially likely to be considered materially prejudicial to ongoing
criminal proceedings." *See* ABA Model Rules of Professional Conduct
3.6, cmt; *see also* E.D. Pa. LCrR. 53.1; M.D. Pa. LR 83.2; W.D. Pa. LCrR.
83.C. While these rules apply to attorneys in a case, they are instructive
because they recognize that similar information (criminal record,
history of flight, confessions and statements, and so on) discussed at a
preliminary arraignment can be prejudicial.

Thus, to allow dissemination of audio recordings of a defendant's
own words about these matters would endanger a defendant's right to a

---

[17] The prejudicial nature of such information is also reflected in the
state rule limiting access to information that pretrial services obtains
from defendants. *See* Pa.R.Crim.P. 530(C).

fair trial. A person could post audio of a defendant admitting to prior criminal acts, drug abuse, escape, and other matters that would not be admissible at trial, thereby prejudicing a right to a fair trial. Indeed, a defendant may inadvertently discuss the crimes that they are charged with.[18]

This is why the District Court's contention that an arrestee's privacy at a bail hearing is not more compelling than at later stages in the proceedings, where transcripts are produced, is incorrect. Those later proceedings do not involve the release of a defendant's words spoken in their own voice. While the media can report on all this information now by observing criminal court proceedings, limiting it to reporting as opposed to rebroadcasting a defendant's own admissions to inadmissible and prejudicial information is a policy choice to help safeguard against potential prejudice.

Indeed, the Bail Fund highlights the difference between hearing someone's voice as opposed to reading their words: it alleges that audio

---

[18] The Bail Fund's October 2018 Bail Watch Report notes that defendants have been witnessed discuss the underlying facts of the criminal charges during an arraignment. (Joint Appendix 67, Stipulation ¶ 59, https://perma.cc/9Y29-W4SA, at page 25.)

recordings "fundamentally change" the reporting's substance and convey the "human aspects" more "powerfully" than can be done in writing. (Joint Appendix 48, Complaint ¶ 43.) Judicial Appellants agree: spoken words from a defendant can be much more powerful than if they are in writing. It is this type of prejudice that the Pennsylvania courts seek to avoid – the impact on a defendant's ability to receive a fair trial is increased if that defendant's own words and voice are broadcast on the internet and elsewhere, tainting public opinion about the defendant before they have their day in court. *See Gannett Co., Inc.*, 443 U.S. at 378 (trying to "measure with any degree of certainty the effects of such publicity on the fairness of the trial" is difficult).[19]

Moreover, a defendant and their counsel may be unwilling to discuss mental health, drug-related issues, and other relevant bail factors if they know that the media may rebroadcast their statements, which would affect the bail decision by limiting the relevant information that the magistrate needs. *Cf. McKay v. Federspiel,* 2014 WL 7013574, at *6 (E.D. Mich. 2014)(recognizing that a witness may be less

---

[19] Whether the Bail Fund's recorders are silent does not alleviate this prejudice.

forthcoming if their answers were being recorded), *aff'd on other grounds*, 823 F.3d 862 (6th Cir. 2016). The District Court's conclusion here that this argument is undercut by Municipal Court's internal recording misses a distinguishing point: those recordings are not released to the public. What the Bail Fund intends to do here – post audio clips on the internet – is poles apart.

These potential prejudices are the type that the Supreme Court warned about in *Gannett Co., Inc.*, and they are the type that the Pennsylvania Supreme Court, Municipal Court, and courts through the state and federal systems have tried to mitigate by making a policy decision in their roles in administering their courts.

### 2. The Rules preserve courtroom decorum and reduce burdens on judicial officers and court staff.

In addition to mitigating the potential prejudice to criminal defendants, the Rules also allay the burdens on the magistrates and court officials, who have to monitor court attendees to ensure that the devices are silent, that they capture only audio as opposed to video, and so on. In having a preventative rule, Pennsylvania has made a

reasonable policy decision to avoid these issues, allowing the magistrates to focus on the proceedings, and ensure decorum.[20]

That recordings can be made in "less disruptive" ways is irrelevant: there is no First Amendment right to record to begin with. Further, whether the devices are silent does not reduce the burden on judicial officers and court staff having to monitor who in the gallery may be simply audio recording as opposed to video recording or taking pictures.

The Bail Fund's extensive policy arguments about whether the Rules are reasonable highlights the downfall of its argument. The United States Supreme Court and other courts have already concluded that whether to allow recordings is a policy choice for each court system to make – not a constitutional question.

In sum, there is no First Amendment right to record courtroom proceedings. The question, instead, is left to each court and judicial

---

[20] Moreover, it cannot be assumed that other persons or entities will make audio recordings for simply reporting on proceedings. Attendees would have free reign to record audio and then easily publish it on the internet and elsewhere for prejudicial reasons. Municipal Court and the magistrates tasked with conducting arraignments cannot ascribe the intent, purpose, or motive to every courtroom observer before a violation takes place and a defendant's own words are out in public.

system as a policy matter – as the Supreme Court recognized in *Chandler*. The Pennsylvania Supreme Court and Municipal Court have made reasonable policy decisions consistent with longstanding case law that mitigates potential prejudice, ensures the decorum of court proceedings, and allows judicial officers to focus on their vital judicial tasks, while still ensuring the public and media's access to court and to court filings and information. What is more, the other branches in Pennsylvania's government have made the same policy decision by criminalizing unauthorized court recording.

## E.    The District Court's decision has far-reaching statewide impact on over 500 magisterial district courts in Pennsylvania.

Finally, even though the District Court's decision is technically limited to Philadelphia Municipal Court, its decision has an impact on all 500-plus Magisterial District Courts throughout the Commonwealth. Rule of Criminal Procedure 112 and Rule of Judicial Administration 1910 apply in every Pennsylvania court. And while courts of common pleas transcribe court hearings and trials, magisterial district courts do not. *See* Pa.R.Crim.P. 115(a)(only court proceedings after the equivalent of a preliminary hearing must be recorded or transcribed). Thus, the

lower court's holding that the Municipal Court either transcribe preliminary arraignments or allow audio recordings will effectively apply to every magisterial district court in Pennsylvania: these courts do not make official transcripts of arraignments and preliminary hearings.

Magisterial district courts generally do not possess the recording equipment necessary to create transcripts. The cost of requiring official transcription for every magisterial district court in Pennsylvania would be exorbitant. Moreover, these courts rely almost solely on county funding, which would necessitate individual requests to counties to fund recording capabilities. *See* 42 Pa.C.S.A. § 3722 (counties must provide to magisterial courts "all necessary accommodations, goods and services which by law have heretofore been furnished by the county.")[21]

Thus, essentially, if the District Court's legal conclusion is upheld, every magisterial district court will conceivably have to allow attendees to make audio recordings. Unlike in Philadelphia and Pittsburgh, preliminary arraignments in the rest of Pennsylvania do not occur in

---

[21] Municipal Court, as an entity of the First Judicial District, relies on funding from the City of Philadelphia.

centralized courthouses in courtrooms dedicated only to arraignments. Magisterial district courts are scattered throughout the state, almost all without sheriffs in the building or even close by. Thus, the magisterial district judges – in addition to having to tend to their judicial duties – have to police who may be simply making an audio recording versus a video recording.

Also, arraignments in these courts do not necessarily occur at set times – they may happen in-between civil, traffic, or other cases, which leads to administrative issues. For example, judges would have to determine whether attendees have stopped recording an arraignment because there may be another case about to start for which there is no right to record, such as a civil case. In a busy courtroom, that would be not only challenging, but would impede the effective administration of the judicial system and erode decorum.

## Conclusion

Judicial Appellants respectfully request that this Honorable Court reverse the District Court's Order granting summary judgment in the Bail Fund's favor and remand this case to the District Court for an order granting Judicial Appellants' Motion for Summary Judgment and denying the Bail Fund's summary judgment motion. *See Nazay v. Miller*, 949 F.2d 1323, 1328 (3d Cir. 1991).

Respectfully submitted,

s/Michael Daley
MICHAEL DALEY, ESQUIRE
Attorney I.D. No. PA 77212
MEGAN L. DAVIS, ESQUIRE
Attorney I.D. No. PA 321341
Supreme Court of Pennsylvania
Administrative Office of PA Courts
1515 Market Street, Suite 1414
Philadelphia, PA 19102
legaldepartment@pacourts.us
(215) 560-6326, Fax: (215) 560-5486

## Certifications

1.    The undersigned counsel certifies that he is a member in good standing of the Bar of this Court.

2.    The Brief contains 9862 words, not including the Title Page, Table of Contents, Table of Authorities, and Certificates. Certification is based on the word processor used to prepare the Brief.

3.    The electronic brief's text is identical to the text in the paper copies filed with the Court.

4.    A virus detection program has been run on the electronic brief filed in this Court and no virus has been detected. The virus protection program used is McAfee Virus Scan – Enterprise Version.

s/Michael Daley
MICHAEL DALEY, ESQUIRE

## Certificate of Service

The undersigned certifies that on May 1, 2020, he caused the

foregoing *Brief of Appellant* to be served upon Appellee by CM/ECF.


s/Michael Daley
MICHAEL DALEY, ESQUIRE